## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **LILLIAN EASLEY and all others similarly situated,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) **Case No. 1:19-cv-00937-KD-N** |
| | ) |
| **HUMMINGBIRD FUNDS, D/B/A BLUE TRUST LOANS, et al.;** | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

I.      **Introduction**

Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Motion" should be denied for the following reasons.

The present state of the law in the Eleventh Circuit and other appellate courts clearly demonstrates that Defendants' motion to dismiss for lack of subject matter jurisdiction must fail as to the Plaintiff's claims for prospective injunctive and declaratory relief and that, as to damage claims, this Court must grant the Defendants' Motion unless it orders discovery which would allow the Plaintiff to look behind the Defendants' self-serving affidavit and unsupported assertions.

The Plaintiff points out, *infra,* that the Defendants' burden of proof analysis is incorrect with regard to Defendants' effort to show that the Defendant Hummingbird Funds, d/b/a Blue Trust Loans ("Blue Trust") is an "arm of the tribe" for purposes of the present motion. That burden rests with the Defendant. But case law in the federal circuits unanimously holds that, where the Plaintiff seeks prospective injunctive and declaratory relief, the "arm of the tribe" analysis becomes

irrelevant, because *even the tribe itself* cannot claim sovereign immunity against those forms of relief.

Defendants' affidavit has at least touched upon the factors the circuit courts have applied in analyzing whether a corporate entity such as Blue Trust constitutes an "arm of the tribe" for the sovereign immunity analysis. These factors are: "'(1) the method of the entities' creation; (2) their purpose; (3) their structure, ownership, and management; (4) the tribe's intent to share its sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) the policies underlying tribal sovereign immunity and the entities' "connection to tribal economic development, and whether those policies are served by granting immunity to the economic entities.'" *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 177 (4th Cir. 2019) (*quoting Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010)). But tribal sovereign immunity does not always extend to economic entities such as Blue Trust, even when those entities are subdivisions of a tribe. *Breakthrough Mgmt. Grp., Inc. v. Chukchansl Econ. Dev. Auth.*, 629 F.3d 1173, 1184 (10th Cir. 2010). These questions "require[] a fact intensive inquiry." *Private Solutions, Inc., v. SCMC*, LLC (D. N.J. 2016). In the *Private Solutions* case, the United States District Court for the District of New Jersey held that more discovery . . . [was] required to appropriately consider the issue." *Id.*[1]

Finally, the concept of qualified immunity is not available to the individual Defendants here, as clearly demonstrated by the facts and even the case law the Defendants cite in support of this argument.

_____

[1] Plaintiff cites the *Private Solutions* observation that more discovery would be required to determine whether the defendant in that case met the *Breakthrough Management* test to highlight the fact that Plaintiff, though she sought discovery on the forum non conveniens issue and engaged in colloquies with counsel for defendants early in the case on the need for a  discovery schedule, has so far not been allowed to conduct any discovery in order to look behind the allegations in Defendants' obviously self-serving affidavit.

## II.    The Defendants' Motion Should be Denied Because the Plaintiff Seeks Prospective Injunctive and Declaratory Relief.

Neither Blue Trust, the alleged tribal entity defendant, nor the individual defendants can rely upon the concept of "tribal sovereign immunity" as a defense where a complaint states claims for prospective injunctive relief, as the First Amended Complaint in this case clearly does.[2] The Second Circuit Court of Appeals recently held that "tribal sovereign immunity. . . . poses no barrier to plaintiffs seeking prospective equitable relief for violations of federal or state law [and] *tribes and their officers* are not free to operate outside of Indian lands without conforming their conduct in these areas to federal and state law. *Gingras v. Think Finance, Inc.*, 922 F. 3d 112 (2nd Circuit 2019).

The *Gingras* decision relies on an exception to sovereign immunity carved out by the United States Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908). *Young*, as the Second Circuit explained in *Gingras, "*permits plaintiffs seeking prospective, injunctive relief to sue state government officials for violations of federal law." *Id.* at 121. The *Gingras* court reasoned that "it is unremarkable" that native American tribes can also be sued for prospective, injunctive relief based on violations of federal law, since their immunity arises from their status as sovereigns. *Id.* The Plaintiff in the present case pleaded two counts in her Complaint under federal law, the

_____

[2] *See* paras. 89, 104(h), 111(g),(h) (injunctive relief); *see* paras. 50, 104(g), and 111(g) (declaratory relief) (*See Summit Medical Associates, PC v. Pryor,* 180 F. 3d 1326, 1339 (11th Circuit 1999) (Affirming district court's denial of motion to dismiss lawsuit against state officials on sovereign immunity grounds where plaintiffs sought prospective injunctive and declaratory relief, the court observed that "[h]ere, Appellees unquestionably seek prospective relief—a declaratory judgment that the partial-birth and post-viability abortion statutes are unconstitutional." In all events, in light of the holding of *Edelman v. Jordan*, 415 U.S. 651, 667 (1974) (no retrospective injunctive relief against state officials), *any* request for injunctive relief in the Plaintiff's Complaint should be construed as a request for prospective injunctive and declaratory relief.)).

Racketeer Influenced and Corrupt Organizations Act, and requested injunctive relief thereunder. The *Gingras* court extended the holding of *Young* to suits for prospective injunctive relief under state law, such as the Alabama Small Loan Act at issue in this case. *Id.*

Similarly, the Eleventh Circuit Court of Appeals has recognised the *Ex parte Young* exception in a number of cases and in various contexts. See *Alabama v. PCI Gaming Auth.*, 801 F. 3d 1278, 1288 (11th Cir. 2015). In that case, as Defendants concede, the Eleventh Circuit held that the *Ex parte Young* exception applies both to federal and state law violations. *Id.* at 1290.[3] In *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999), the appellate court affirmed the district court's denial of a motion to dismiss on sovereign immunity grounds in a case in which abortion clinics sought prospect injunctive and declaratory for allegedly unlawful actions by Alabama state officials.

In a number of cases, the Eleventh Circuit has held that a lawsuit by a school official seeking reinstatement was not barred by sovereign immunity. *Lane v. Central Alabama Community College,* 772 F. 3d 1349 (11th Circuit 2014); *Cross v. Ala. State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (1995); *Lassiter v. Ala. A&M Univ., Bd. of Trs.*, 3 F.3d 1482, 1485 (11th Cir.1993), *vacated on other grounds*, 28 F.3d 1146 (11th Cir.1994).

But this Court need not even rely solely upon persuasive and dispositive circuit court opinions in order to deny Defendants' Motion. Plaintiffs note that the Second Circuit in *Gingras* relied upon more United States Supreme Court opinions than *Ex parte Young*. In *Mescalero*

---

3 The Defendants cite a federal district court case from this Court's sister district, *Leeds, et al., v. Board of Dental Examiners*, 382 F. Supp.3d (N.D. Ala. 2019) wherein that trial court stated that the *Ex parte Young* prospective injunctive and declaratory relief exception does not apply to claims under state law. With all due respect to that district court, it appears not to have recognised (and did not cite) *Alabama v. PCI Gaming* or the application of the *Wagnon* case (in which the Supreme Court held that Kansas could tax fuel distributed to the Prairie Band despite the tribe's assertion of sovereign immunity). The *Leeds* court did not have the benefit of the *Gingras* Second Circuit case, which was not decided until April 24, 2019, after the April 2 issuance of the *Leeds* memorandum opinion.

*Apache Tribe v. Jones,* 411 U.S. 145, 148-49, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973), the Supreme Court held that "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State." In citing *Mescalero*, the Second Circuit held that "[t]he Tribal Defendants here engaged in conduct outside of Indian lands when they extended loans to the Plaintiffs in Vermont." *Gingras v. Think Finance, Inc.*, 922 F. 3d 112, 121 (2nd Circuit 2019). Just so, of course, in the present case; the Defendants herein engaged in conduct outside their borders when they made illegal, usurious loans to the Plaintiff in Mobile, Alabama.

The United States Supreme Court, quoting *Mescalero*, held again just a few years ago in *Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95 113 (2005), a taxation case, that "[u]nless federal law provides differently, Indians going beyond reservation boundaries are subject to *any generally applicable state law* (emphasis added). In addition, the United States Supreme Court squarely held in *Michigan v. Bay Mills Indian Community* that "tribal immunity does not bar . . . a suit for injunctive relief against *individuals*, including tribal officers, responsible for unlawful conduct." 134 S.Ct. 2024, 2034-35 (2014) (emphasis in original); *see Santa Clara Pueblo v. Martinez*, 436 U.S., at 59, 98 S.Ct. 1670 ("As an officer of the Pueblo, [the individual] petitioner . . . is not protected by the tribe's immunity from suit."); *Puyallup Tribe, Inc. v. Department of Game of Wash.*, 433 US 165, 171-72 ("[W]hether or not the Tribe itself may be sued in a state court without its consent or that of Congress, a suit to enjoin violations of state law by individual tribal members is permissible.").

Defendants' discussion of the history of tribal sovereign immunity and the status of such immunity in the present misrepresents both the history of tribal sovereign immunity and the current state of the law. The word "Congress" or its adjectival variant "Congressional" appears

twenty times in Defendants' Motion. In each and every instance, Defendants write of the participation of Congress in the recognition of tribal sovereign immunity as though Congress had enacted a statute providing for tribal sovereign immunity for commercial activities of Indian tribes outside Indian lands.

Not so. To the extent it remains recognised today, sovereign immunity for such activities stems from one errant decision by the United States Supreme Court in 1998, *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc*., 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). Indeed, "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State." *Mescalero Apache Tribe v. Jones*, 411 U. S. 145, 148-149 (1973). Indeed, Congress has not only never enacted legislation providing for sovereign immunity for Indian nations conducting economic activities outside tribal boundaries; no statute enacted by Congress created sovereign immunity for the activities of Indian tribes inside their own boundaries, either. Both these concepts of immunity were created by the courts, not Congress. The Defendants' misplaced mentions of Congress are understandable; the United States Supreme Court has in recent years attempted to create a self-justification for its decisions in this area by rationalizing that even though it created this doctrine, it should look to Congress to overturn it.

But, as the Rev. Dr. Martin Luther King observed, "[t]he arc of the moral universe is long, but it bends toward justice." Plaintiff respectfully submits that, in the not-so-distant future and in the right case, a majority of the Supreme Court will adopt the dissenting opinions in *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc*., 523 US 751 (1998) and *Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024 (2014). In those dissenting opinions, authored by Justices Stevens and Thomas, respectively, a shifting minority of Supreme Court justices argue that the Court's claimed

deference to Congress seems disingenuous considering the fact that the entire doctrine of sovereign immunity for Indian tribal governments was judicially created and that, as Justice Thomas explained,

> In Kiowa, this Court adopted a rule without a reason: a sweeping immunity from suit untethered from commercial realities and the usual justifications for immunity, premised on the misguided notion that only Congress can place sensible limits on a doctrine we created. The decision was mistaken then, and the Court's decision to reaffirm it in the face of the unfairness and conflict it has engendered is doubly so.

*Id.* at 2055 (Thomas, J., dissenting).

In fact, in *Bay Mills*, Justice Thomas in dissent recognizes just the sort of evil that the present state of the law of Indian tribe sovereign immunity has engendered, just the sort of evil found in the present Defendants' conduct:

> In the wake of *Kiowa*, tribal immunity has . . . been exploited in new areas that are often heavily regulated by States. For instance, payday lenders (companies that lend consumers short-term advances on paychecks at interest rates that can reach upwards of 1,000 percent per annum) often arrange to share fees or profits with tribes so they can use tribal immunity as a shield for conduct of questionable legality.

*Id.* at 2052 (Thomas, J., dissenting).

Plaintiff urges this Honorable Court to adopt the dissents in the *Bay Mills* and *Kiowa* cases and hold that neither the individual nor the entity Defendant may assert sovereign immunity for commercial activities regulated by the United States, Alabama, and other states, and that affect non-Indian consumers outside tribal lands.

### III.   The Burden of Proof Falls on Defendants to Show by a Preponderance of the Evidence that They Are Entitled to Sovereign Immunity.

It is well-settled that an entity seeking tribal immunity must show by a preponderance of the evidence that it is entitled to that immunity, either as an arm of the tribe or as the tribe itself.

The Fourth Circuit's holding in *Williams v. Big Picture Loans, LLC,* 929 F. 3d 170 (4th

Circuit 2019), explains this doctrine:

> In determining the proper burden allocation in this context, this Court's arm-of-the-state doctrine guides our analysis. Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction. The same burden allocation applies to an entity seeking immunity as an arm of the tribe. Placing the burden of proof on the defendant entity aligns with our reasoning in Hutto that sovereign immunity is "akin to an affirmative defense" and gives proper recognition to the similarities between state sovereign immunity and tribal sovereign immunity. Id. Moreover, such an allocation recognizes that an entity that is formally distinct from the tribe should only be immune from suit to the extent that it is an arm of the tribe. Unlike the tribe itself, an entity should not be given a presumption of immunity until it has demonstrated that it is in fact an extension of the tribe. Once a defendant has done so, the burden to prove that immunity has been abrogated or waived would then fall to the plaintiff. Finally, as a practical matter, it makes sense to place the burden on defendants like Ascension and Big Picture, as they will likely have the best access to the evidence needed to demonstrate immunity.

*Id.* at 176-77.

The Fourth Circuit's *Hutto* decision, cited in *Big Picture Loans*, not only set forth the

burden of proof as referenced in the above quotation from *Big Picture* Loans, it also collected

other federal appellate court cases which recognize this burden of proof analysis:

> Sovereign immunity is akin to an affirmative defense, which the defendant bears the burden of demonstrating. In so concluding, **we join every other court of appeals that has addressed the issue**. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 237-39 (2d Cir.2006); *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp.,* 322 F.3d 56, 61 (1st Cir.2003); *Gragg v. Ky. Cabinet for Workforce Dev.,* 289 F.3d 958, 963 (6th Cir.2002); *Skelton v. Camp,* 234 F.3d 292, 297 (5th Cir.2000); *Christy v. Pa. Turnpike Comm'n,* 54 F.3d 1140, 1144 (3d Cir. 1995); *Baxter v. Vigo Cnty. Sch. Corp.,* 26 F.3d 728, 734 n. 5 (7th Cir.1994), *superseded by statute on other grounds as recognized in Holmes v. Marion Cnty. Office of Family & Children,* 349 F. 3d 914, 918-19 (7th Cir.2003); *ITSI TV Prods., Inc. v. Agric. Ass'ns,* 3 F.3d 1289, 1292 (9th Cir. 1993).

*Hutto et al. v. South Carolina Retirement System et al.*, 773 F.3d 536, 543 (2014); s*ee*

*also Gristede's Foods, Inc. v. Unkechuage Nation*, 660 F.Supp.2d 442, 465 (E.D.N.Y. 2009); *City*

*of N.Y. v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966, 2009 WL 705815, at \*4 (E.D.N.Y. Mar. 16, 2009).

**IV.     The Qualified Immunity Defense is not Available to the Individual Defendants.**

This Court should have no difficulty rejecting the Defendants' argument on qualified immunity. Indeed, the individual defendants are not entitled to assert the qualified immunity defense under the very case law they cite. Defendants dumped the following quotation from an 11th Circuit case into their Motion: "Once the affirmative defense of qualified immunity is advanced . . . [u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Defendants' Motion, p. 22 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). They add a few other such quotations which Plaintiff will not reproduce here.

The standard of review for a motion to dismiss under 12(b)(6) of the Federal Rules of Civil Procedure sets a high bar: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, this Court is "required to resolve all issues of material fact in favor of the plaintiff" in reviewing a qualified immunity defense. *Lee v. Ferraro*, 284 F. 3d 1188, 1190 (11th Circuit 2002); *St. George v. Pinellas County*, 285 F. 3d 1334 (11th Circuit 2002). ("In reviewing the grant of a motion to dismiss, we are required to accept the allegations in the complaint as true."). Tellingly, Defendants do not cite to the Plaintiff's Complaint in this section of their Motion. The entirety of Plaintiff's Complaint amounts to a recitation of the Defendants' violations of federal and Alabama law. *See* First Amended Complaint, paras. 30-32; 57-75. The Alabama

9

Supreme Court has held in a number of cases involving payday loan businesses that violations of the kind alleged in the Plaintiff's Complaint are unlawful under the Alabama Small Loan Act. *See, e.g., Austin v. Alabama Check Cashers Ass'n*, 936 So. 2d 1014 (Ala. 2005).

Defendants claim Plaintiff did not plead that the individual defendants "engaged in any conduct off of tribal lands."  Not true. See paras. 53 and 54; see para. 60 ("Defendants Cadotte, Trepania, Sharlow, Shuman, Carley, Harden and Starr caused Blue Trust to enter into payday lending relationships with banks (presently not named as defendants herein) to process ACH transactions. Those banking relationships enabled Blue Trust to process ACH transactions for the Plaintiff and the Class. The ACH transactions involved interstate commerce because they flowed through Blue Trust in Wisconsin, Plaintiff in Alabama and Class Members throughout the United States, other targets of the illegal lending scheme and different intermediaries throughout the United States." In all events, the individual Defendants, who obviously control the activities of the entity Defendants, set in motion all the events that resulted in the Plaintiff's taking out a loan and executing documents on her computer in Mobile, Alabama, receiving funds in her local bank account, and paying interest charges on those loans through her local Alabama bank.

## V.    Conclusion

For the foregoing reasons, Plaintiff respectfully submits that the Defendants' Motion should be denied.

DATED: May 29, 2020

/s/_____
Steven P. Gregory, Esq.
ASB-0737-R73S

OF COUNSEL FOR PLAINTIFF:

Gregory Law Firm, P.C.
505 20th Street North
Suite 1215
Birmingham, AL 35203
Telephone 205-208-0312
Email: steve@gregorylawfirm.us

EARL P. UNDERWOOD, JR.
UNDERWOOD & RIEMER, PC
21 S. Section Street
Fairhope, AL 36532
251.990.5558 Office
251.990.0626 Fax
epunderwood@alalaw.com

KENNETH J. RIEMER
UNDERWOOD & RIEMER, PC
2153 Airport Blvd
Mobile, Alabama 36606
251.432.9212 Office
251.433.7172 Fax
kriemer01@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify, on this 29th day of May, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send an electronic notification of such filing to all counsel of record.

/s/_____
Steven P. Gregory, Esq.