# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LILLIAN EASLEY, *and all others similarly situated*, <br>     Plaintiff, <br><br> v. <br><br> HUMMINGBIRD FUNDS *d/b/a Blue Trust Loans*, *et al.*, <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 1:19-00937-KD-N <br> ) <br> ) <br> ) <br> ) |

## REPORT AND RECOMMENDATION

This action is before the Court on the "Motion to Dismiss for Lack of Subject Matter Jurisdiction" (Doc. 37) and "Motion to Dismiss for Forum Non Conveniens or, in the Alternative, Stay for Tribal Exhaustion" (Doc. 40) filed by the remaining Defendants (hereinafter, "the Defendants") – Hummingbird Funds, d/b/a Blue Trust Loans ("Hummingbird"), and John (Randy) Cadotte, William Trepania, Daylene Sharlow, Tweed Shuman, Don Carley, Lee Harden, and Trina Starr (collectively, "the Individual Defendants").[1] The assigned District Judge has referred said motions to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (2/11/2020 electronic reference).

In accordance with the Court's briefing schedule (Docs. 67, 72), the Plaintiff, Lilian Easley, has filed timely filed responses (Docs. 69, 70) in opposition to the motions, and the Defendants have timely filed replies (Docs. 73, 74) to the responses. The subject motions are now under submission and ripe for disposition.

---

[1] The last defendant, James Williams, Jr., has been voluntarily dismissed as a party to this action. (*See* Docs. 52, 53).

I.   *Summary of the Complaint*[2]

Hummingbird is an internet money lender. On March 26, 2019, Easley obtained a loan from Hummingbird in the principal amount of $650, with an annual interest rate of 609.72%. Between April 5 and July 26, 2019, Easley paid a total of $1,928.12 to satisfy the loan repayment. Easley alleges that Hummingbird's loan practices violate both the Alabama Small Loan Act and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Easley brings claims on behalf of herself and proposed classes of similarly situated individuals who took out loans with Hummingbird.

II.   *Analysis*

A.   **Tribal Sovereign Immunity**

> Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms. 'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. 'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

---

[2] This summary is taken from the claims and well-pleaded factual allegations asserted in Easley's First Amended and Restated Complaint (Doc. 34), which was properly filed as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B) and is the current operative complaint in this action. *See Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (per curiam) ("As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation and quotation omitted))); *Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (per curiam) (citation and quotations omitted). Because, as they have previously represented (*see* Doc. 63, PageID.991), the Defendants' Rule 12(b)(1) motion here is a facial attack, Easley "is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Id.* at 1529.

The Defendants assert that the doctrine of tribal sovereign immunity deprives this Court of subject-matter jurisdiction over Easley's claims against them.

> " 'Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.' " *Florida v. Seminole Tribe*, 181 F.3d 1237, 1241 (11th Cir. 1999) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S. Ct. 1670, 1677, 56 L. Ed. 2d 106 (1978)). Thus, "an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 754, 118 S. Ct. 1700, 1702, 140 L. Ed. 2d 981 (1998). Tribal sovereign immunity, where it applies, bars actions against tribes regardless of the type of relief sought. *See, e.g., id.* at 760, 118 S. Ct. at 1705 (barring suit for money damages); *Fla. Paraplegic Ass'n v. Miccosukee Tribe of Indians*, 166 F.3d 1126, 1127 (11th Cir. 1999) (barring suit for injunctive relief).

*Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1207–08 (11th Cir. 2009). "Tribal sovereign immunity is a jurisdictional issue." *Furry v. Miccosukee Tribe of Indians of Fla.*, 685 F.3d 1224, 1228 (11th Cir. 2012). "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe*, 523 U.S. at 754. The Supreme Court has "declined … to make any exception for suits arising from a tribe's commercial activities, even when they take place off Indian lands."

*Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 790 (2014) (citing *Kiowa Tribe*). *Accord Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1287 (11th Cir. 2015) ("[T]he Supreme Court has not 'drawn a distinction between governmental and commercial activities of a tribe' when deciding whether there is tribal immunity from suit." (quoting *Kiowa Tribe*, 523 U.S. at 754-55).

Easley's operative complaint acknowledges, though without appearing to accept, that Hummingbird "purports to be an entity organized under the laws of" the Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin ("the LCO Tribe"). (Doc. 34, PageID.477, ¶ 5). However, Easley also unreservedly acknowledges that loans made through Hummingbird are managed by LCO Financial Services, which is a "board or department or division of the LCO Tribe…" (*Id.* ¶ 6). The complaint also alleges that the Individual Defendants are members of the LCO Financial Services board of directors. (*See id.*, PageID.477-478, ¶¶ 7 – 14).

The LCO Tribe is a federally recognized Indian tribe, *see* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 84 Fed. Reg. 1200, 1202, 2019 WL 399367 (Feb. 1, 2019),[3] and Easley, while disagreeing with current precedent,[4] does not dispute that the LCO

---

[3] "[T]he inclusion of a group of Indians on the *Federal Register* list of recognized tribes would ordinarily suffice to establish that the group is a sovereign power entitled to immunity from suit." *Cherokee Nation of Oklahoma v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997). "The contents of the Federal Register shall be judicially noticed…" 44 U.S.C.A. § 1507.

[4] Specifically, Easley asks the Court to disregard the holdings of the majority in *Bay Mills* and *Kiowa Tribe* and instead "adopt the dissents" of those decisions, based on her belief that, "in the not-so-distant future and in the right case, a majority of the

Tribe itself is entitled to tribal sovereign immunity under that precedent. Hummingbird and the Individual Defendants argue that the LCO Tribe's immunity extends to them and entitles them to dismissal of Easley's claims.

"[T]ribal officials are generally entitled to immunity for acts taken in their official capacity and within the scope of their authority..." *PCI Gaming*, 801 F.3d at 1288. However, "in a suit brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest and the tribe's sovereign immunity is not implicated. That an employee was acting within the scope of his employment at the time the tort was committed is not, on its own, sufficient to bar a suit against that employee on the basis of tribal sovereign immunity." *Lewis v. Clarke*, -- U.S. --, 137 S. Ct. 1285, 1288, 197 L. Ed. 2d 631 (2017).

Easley only alleges that the Individual Defendants are being "sued in their individual capacities[,]" (Doc. 34, PageID.477, ¶ 7), and the Individual Defendants'

---

Supreme Court will adopt th[ose] dissenting opinions..." (Doc. 69, PageID.1044). The undersigned, of course, declines, as all lower courts "are bound to follow [a Supreme Court decision] unless and until the Supreme Court itself overrules that decision." *United States v. Thomas*, 242 F.3d 1028, 1035 (11th Cir. 2001) (rejecting argument that court should disregard binding Supreme Court precedent because the Court had indicated it might overrule that precedent on some future occasion). *See also Freemanville Water*, 563 F.3d at 1210 ("The Supreme Court ... has 'sustained tribal immunity from suit without drawing a distinction based on where the tribal activities occurred.' *Kiowa Tribe*, 523 U.S. at 754, 118 S. Ct. at 1703. The Court declined its last opportunity to limit tribal immunity to activities occurring only on tribal lands, preferring instead to 'defer to the role Congress may wish to exercise in this important judgment.' *See id.* at 758, 118 S. Ct. at 1705. Being bound to follow the Supreme Court's decision, we cannot draw a distinction based on where the tribal activity of providing water service to all of its lands occurs."). Likewise, this Court must follow all Eleventh Circuit Court of Appeals precedent unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by the Court of Appeals sitting *en banc*. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

arguments that they are entitled to tribal sovereign immunity do not extent beyond assertions that they are tribal employees who were acting within the scope of their employment, which *Lewis* makes clear "is not, on its own, sufficient to bar a suit against [them in their individual capacities] on the basis of tribal sovereign immunity." 137 S. Ct. at 1288. The Individual Defendants argue that the Court should look beyond Easley's "individual capacity" label and find that the relief she seeks is really only appropriately brought against them in their official capacity; however, the undersigned is not persuaded to do so for purposes of determining entitlement to tribal sovereign immunity. While suing the Individual Defendants in only their individual capacities certainly might limit Easley's ability to obtain all of the relief she seeks, that issue goes to the merits of her claims. As the Supreme Court has explained, officers "sued in their personal capacity come to court as individuals," and "sovereign immunity does not erect a barrier against suits to impose individual and personal liability." *Id.* at 1291 (quotations omitted). [5] Accordingly, because the Individual Defendants are only being sued in their individual capacities, they are not entitled to dismissal of Easley's claims under tribal sovereign immunity.[6]

---

[5] *See also Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1296 (10th Cir. 2008) ("The general bar against official-capacity claims … does not mean that tribal officials are immunized from individual-capacity suits arising out of actions they took in their official capacities … Rather, it means that tribal officials are immunized from suits brought against them because of their official capacities—that is, because the powers they possess in those capacities enable them to grant the plaintiffs relief on behalf of the tribe.").

[6] "In *Ex parte Young*, the Supreme Court recognized an exception to sovereign immunity in lawsuits against state officials for prospective declaratory or injunctive

relief to stop ongoing violations of federal law. 209 U.S. 123, 155–56, 28 S. Ct. 441, 52 L. Ed. 714 (1908). Under the legal fiction established in *Ex Parte Young*, when a state official violates federal law, he is stripped of his official or representative character and no longer immune from suit. *Id.* at 159–60, 28 S. Ct. 441." PCI Gaming, 801 F.3d at 1288. The Eleventh Circuit has "extended the *Ex parte Young* doctrine to tribal officials." *Id.* Thus, "[a]lthough tribal officials are generally entitled to immunity for acts taken in their official capacity and within the scope of their authority, 'they are subject to suit under the doctrine of *Ex parte Young* when they act beyond their authority' by violating a federal statute." *Id.* (quoting *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*, 177 F.3d 1212, 1225 (11th Cir. 1999)). Additionally, "tribal officials may be subject to suit in federal court for violations of state law under the fiction of *Ex parte Young* when their conduct occurs outside of Indian lands." *Id.*

Easley invokes the *Ex parte Young* exception to tribal sovereign immunity in her response. However, that exception does not apply in this case because it is only available against tribal officials in their official capacities. Easley has alleged only individual capacity liability against the Individual Defendants, and the exception does not apply to artificial entities such as Hummingbird.

Despite bringing their motion as one to dismiss for lack of subject matter jurisdiction, the Individual Defendants have also requested dismissal of the individual capacity claims against them on the basis of qualified immunity, which is more appropriately brought in a motion to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted. *See Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) ("Qualified immunity is an affirmative defense to personal liability ... [Q]ualified immunity is a question of law that may be generally asserted (1) on a pretrial motion to dismiss under Rule 12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Rule 12(c); (3) on a summary judgment motion pursuant to Rule 56(e); or (4) at trial."). Nevertheless, the Individual Defendants have not demonstrated entitlement to qualified immunity. "The doctrine of qualified immunity protects *government officials* from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted) (emphasis added). The Individual Defendants have not cited any authority that extends the protections of qualified immunity to tribal officials. Moreover, as to their claims that they could not have reasonably foreseen that they could be held individually liable, the Individual Defendants have been put on notice at least since the U.S. Supreme Court's 2017 decision in *Lewis*, 137 S. Ct. 1285 – well before Easley took out the subject loan – that tribal employees are not protected by tribal sovereign immunity when sued in their individual capacities.

The Individual Defendants also perfunctorily raise a due process claim in the last sentence of their opening brief, which the Court should decline to entertain as insufficiently raised. *See NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th

As for Hummingbird, if it "functions as an arm of a tribe[,]" then it "shares in the tribe's immunity." *PCI Gaming*, 801 F.3d at 1288. The Eleventh Circuit does not appear to have articulated a formal test for determining when an entity can be deemed a tribal arm,[7] and both sides cite to factors articulated in *Williams v. Big Picture Loans, LLC*, 929 F.3d 170 (4th Cir. 2019), in arguing this issue. In *Williams*, the Fourth Circuit noted that the Tenth Circuit considered the following "non-exhaustive factors ... : (1) the method of the entities' creation; (2) their purpose; (3) their structure, ownership, and management; (4) the tribe's intent to share its sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) the policies underlying tribal sovereign immunity and the entities' 'connection to tribal economic development, and whether those policies are served by granting immunity to the economic entities.' " 929 F.3d at 177 (citing in *Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010)). The Fourth Circuit also noted that the Ninth Circuit "has adopted the first five *Breakthrough* factors to analyze arm-of-the-tribe immunity and also considers the central purposes underlying the doctrine of tribal

---

Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). Regardless, their due process claim appears meritless, as their real complaint is not that certain statutes failed to give them sufficient notice of unlawful activity, but rather that the evolving doctrine of tribal sovereign immunity made it uncertain whether they could be held individually liable for violating those statutes.

[7] In *PCI Gaming*, the Eleventh Circuit treated a tribe-owned entity operating casinos as an arm of the tribe where the plaintiff did not dispute that status. *See* 801 F.3d at 1288.

sovereign immunity." *Id.* (citing *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 177 (4th Cir. 2019)).

Agreeing with the Ninth Circuit, the Fourth Circuit "adopt[ed] the first five *Breakthrough* factors to analyze arm-of-the-tribe sovereign immunity and allow[s] the purpose of tribal immunity to inform [its] entire analysis[,]" explaining: "The sixth *Breakthrough* factor, whether the purposes underlying tribal sovereign immunity would be served by granting an entity immunity, overlaps significantly with the first five *Breakthrough* factors. Thus, the extent to which a grant of arm-of-the-tribe immunity promotes the purposes of tribal sovereign immunity is too important to constitute a single factor and [should] instead inform the entire analysis." *Id.* Applying the modified *Breakthrough* analysis, the Fourth Circuit held that an internet payday loan company similar to Hummingbird was a tribal arm entitled to share in tribal sovereign immunity. *See id.* at 177-185.

Easley's operative complaint uncritically acknowledges that Hummingbird's loans are managed by "LCO Financial Services[,]" a "board or department or division of the LCO Tribe…" (Doc. 34, PageID.477,¶ 6). Moreover, as Hummingbird points out, the terms of the subject loan agreement, which Easley has attached to her operative complaint,[8] contain the following indicators that Hummingbird could be an arm of the LCO Tribe:

- multiple provisions stating that the laws of the LCO Tribe govern the

---

[8] Because a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes[,]" Fed. R. Civ. P. 10(c), such "incorporated exhibits" are accepted as true when reviewing the motion to dismiss. *Burch v. Apalachee Cmty. Mental Health Servs., Inc.*, 840 F.2d 797, 798 (11th Cir. 1988).

agreement (*see* Doc. 34-1, PageID.501, 504, 508)

- multiple provisions stating that controversies arising from the agreement will be resolved by the Tribal Resolution Procedures set forth in the Tribal Consumer Financial Services Regulatory Code (*id.*, PageID.501, 508);

- a provision stating that the agreement is being submitted to Hummingbird "as an economic arm, instrumentality, and wholly-owned limited liability company of the Tribe[, which] is a federally-recognized American Indian Tribe and enjoys governmental immunity[,]" and that the Tribe and Hummingbird "express intention … to fully preserve, and not waive either in whole or in part, exclusive jurisdiction, sovereign governmental immunity, and any other rights, titles, privileges, and immunities, to which they are entitled." (*Id.*, PageID.508).

However, Hummingbird has asserted tribal sovereign immunity as a facial Rule 12(b)(1) attack on the complaint. Thus, Easley "is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion[,]" *Lawrence*, 919 F.2d at 1529, such that matters outside of the complaint are generally not considered. [9] Hummingbird argues that, by its mere invocation of tribal sovereign immunity, Easley is required to plead facts affirmatively demonstrating that Hummingbird is not an arm of the LCO Tribe. However, the undersigned agrees with Easley and the

---

[9] While Hummingbird has presented evidence regarding its formation and purpose in support of its other pending motions (*see* Doc. 9), Hummingbird has not cited to any of that evidence in support of its motion to dismiss for lack of subject-matter jurisdiction, and Hummingbird has previously represented to the Court that it has "brought a facial and not a factual attack on subject matter jurisdiction…" (Doc. 63, PageID.991).

Fourth Circuit that the burden of proof should fall to the entity seeking immunity as an arm of the tribe, despite the jurisdictional nature of such immunity. *Williams*, 929 F.3d at 176. The Fourth Circuit explained its reasoning as follows:

> In determining the proper burden allocation in this context, this Court's arm-of-the-state doctrine guides our analysis. Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction. *Hutto v. S.C. Retirement Sys.*, 773 F.3d 536, 543 (4th Cir. 2014). The same burden allocation applies to an entity seeking immunity as an arm of the tribe. Placing the burden of proof on the defendant entity aligns with our reasoning in *Hutto* that sovereign immunity is akin to an affirmative defense and gives proper recognition to the similarities between state sovereign immunity and tribal sovereign immunity. Moreover, such an allocation recognizes that an entity that is formally distinct from the tribe should only be immune from suit to the extent that it is an arm of the tribe. Unlike the tribe itself, an entity should not be given a presumption of immunity until it has demonstrated that it is in fact an extension of the tribe. Once a defendant has done so, the burden to prove that immunity has been abrogated or waived would then fall to the plaintiff. Finally, as a practical matter, it makes sense to place the burden on defendants … , as they will likely have the best access to the evidence needed to demonstrate immunity.

*Id.* at 176–77 (citation and quotation omitted). The Fourth Circuit's view of state sovereign immunity as "akin to an affirmative defense" squares with the Eleventh Circuit's view.[10] And generally, "the existence of an affirmative defense will not

---

[10] *See McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1257 (11th Cir. 2001) ("[T]he jurisdictional bar embodied in the Eleventh Amendment is a rather peculiar kind of jurisdictional issue. Unlike most subject matter jurisdiction issues, which cannot be waived by the parties and must be raised by a court on its own initiative, the Eleventh Amendment does not automatically deprive a court of original jurisdiction. Rather, … the Eleventh Amendment grants the State a legal power to

support a motion to dismiss" unless a complaint's "own allegations indicate the existence of an affirmative defense…" *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). However, a complaint is "not … vulnerable to dismissal simply because [the plaintiff] anticipated and attempted to negate [a] defense…" *Id.* Rather, dismissal is only appropriate if "*the defense clearly appears on the face of the complaint.*" *Id.* (emphasis added)

Here, whether Hummingbird truly is an arm of the LCO Tribe does not clearly appear on the face of the complaint. At most, Easley's operative complaint acknowledges that Hummingbird's loans are managed by a "board or department or division of the LCO Tribe[,]" and attaches a document drafted by Hummingbird that claims Hummingbird is an arm of the LCO Tribe.[11] While those allegations are certainly relevant, they do not, standing alone, clearly demonstrate that Hummingbird is entitled to arm-of-the-tribe immunity under the test articulated in *Williams*.

---

assert a sovereign immunity defense should it choose to do so. This understanding of the Eleventh Amendment as a volitional defense is manifest in decisions allowing it to be waived by the state, or ignored by the court if not raised. Thus, unlike other jurisdictional bars, federal courts are required to consider whether the Eleventh Amendment strips them of jurisdiction only if the state defendant insists that it does." (citations and quotations omitted)).

[11] Contrary to Hummingbird's argument, the undersigned does not believe that Easley has accepted, or obligated the Court to accept, all assertions in the loan agreement as true simply by including it as an exhibit to her complaint. Construing the complaint in the light most favorable to Easley, Hummingbird's assertions in the agreement that it is an arm of the LCO Tribe are simply its own views of its legal status.

Accordingly, the Defendants' "Motion to Dismiss for Lack of Subject Matter Jurisdiction" (Doc. 37) is due to be **DENIED**.

### B. *Forum Non Conveniens*

The Defendants also argue that Easley's case is due to be dismissed under the doctrine of *forum non conveniens,* based on a provision in the subject loan agreement stating that "any controversies that may arise hereunder shall be resolved exclusively by the Tribal Dispute Resolution Procedures as set forth in the Tribal Consumer Financial Services Regulatory Code." (Doc. 34-1, PageID.501). The "Tribal Dispute Resolution Procedures" are described in more detail in the next paragraph of the agreement. (*See id.*). The Defendants assert that this provision is a valid forum selection clause.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.*" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013). In the typical case not involving a forum-selection clause, a district court considering a … *forum non conveniens* motion[] must evaluate both the convenience of the parties and various public-interest considerations." *Id.* at 62. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause…" *Id.* at 63. "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances. A forum-selection clause will be invalidated when: (1) its formation was induced by fraud or overreaching; (2)

the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam) (citations and quotation omitted).

Easley argues that the claimed forum selection clause is invalid for the latter three reasons stated in *Krenkel*, and also because the tribal forum purportedly lacks subject matter jurisdiction. The Defendants argue that, to the extent the Court may have doubts about the tribal forum's subject matter jurisdiction, the Court should, rather than invalidate the forum selection clause, stay the case to allow the tribal forum an opportunity to determine its jurisdiction. *See, e.g., Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 31 (1st Cir. 2000) ("The tribal exhaustion doctrine holds that when a colorable claim of tribal court jurisdiction has been asserted, a federal court may (and ordinarily should) give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims.").

The undersigned finds that a decision on the *forum non conveniens* issue should be deferred until after disposition of the Defendants' motion to compel arbitration (Doc. 39), which is based on the same provision in the loan agreement. All parties have previously requested that the Court rule on the motion to compel arbitration (*see* Docs. 47, 49) first, and the Defendants reiterate this position in their reply in support of their *forum non conveniens* motion (*see* Doc. 74, PageID.1108).

Moreover, the provisions at issue here have more the flavor of an agreement to arbitrate than a simple selection of a forum. Rather than calling for disputes to be resolved by a tribal court, the provision instead requires a complainant abide by a "Tribal Dispute Resolution Procedure" by submitting her complaint to Hummingbird's "management" for resolution, with review of "management's" decision to be made first to the Tribal Consumer Financial Services Regulatory Authority and then to the Tribal Governing Board. (Doc. 34-1, PageID.501). By directing that any complaint submitted through this procedure "be considered similar in nature to a petition for redress submitted to a sovereign government" (*id.*), the agreement tacitly acknowledges that any such complaint is not actually being submitted to a sovereign judicial-type authority. Finally, even if the Court were to agree with Easley that the subject provision is invalid as a mere forum selection clause, it is not clear whether the grounds she argues will also serve to invalidate that provision as an arbitration clause.[12]

Accordingly, the undersigned finds that the Defendants' "Motion to Dismiss for Forum Non Conveniens or, in the Alternative, Stay for Tribal Exhaustion" (Doc. 40) is due to be **DENIED**, without prejudice to their ability to renew the motion after the Court has ruled on their pending motion to compel arbitration (Doc. 39), if

---

[12] *See Dye v. Tamko Bldg. Prod., Inc.*, 908 F.3d 675, 680 n.4 (11th Cir. 2018) ("Although the Federal Arbitration Act embodies an emphatic federal policy in favor of arbitral dispute resolution, this policy does not apply to the threshold question of whether there is a valid agreement to arbitrate between the parties. That question is governed instead by the ordinary state-law principles that govern the formation of contracts." (citations and quotations omitted)).

appropriate.[13] Moreover, because the Court must decide whether Easley's claims are subject to arbitration before addressing the merits of those claims,[14] the Defendants' Rule 12(b)(6) motion to dismiss (Doc. 41) and motion to strike class allegations (Doc. 42) should also be **DENIED**, without prejudice to their ability to renew those motion after the Court has ruled on the pending motion to compel arbitration (Doc. 39), if appropriate.[15]

### III. *Conclusion & Recommendation*

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S), the undersigned **RECOMMENDS** that the Defendants' "Motion to Dismiss for Lack of Subject

---

[13] As previously discussed, Hummingbird has failed to meet its burden of showing that this Court lacks subject matter jurisdiction due to tribal sovereign immunity, and the individual capacity claims against the Individual Defendants are not barred by such immunity. Therefore, and because this Court has original jurisdiction over Easley's federal claims under 28 U.S.C. § 1331 (and supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367), the Court can address the merits of the motion to compel arbitration. *See, e.g., Lower Colorado River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 927 (5th Cir. 2017) ("[A] district court must have subject matter jurisdiction over the underlying dispute in order to compel arbitration under 9 U.S.C. § 4."); *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1300 (11th Cir. 1999) ("Instead of entertaining the motions of the manufacturer and the dealer … to compel arbitration, and to stay further proceedings pending arbitration, the court should have remanded these cases to Alabama circuit court based on want of subject matter jurisdiction.").

[14] *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, -- U.S. --, 139 S. Ct. 524, 530, 202 L. Ed. 2d 480 (2019) ("When the parties' contract assigns a matter to arbitration, a court may not resolve the merits of the dispute even if the court thinks that a party's claim on the merits is frivolous.").

[15] The assigned District Judge has also referred those motions to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (2/11/2020 electronic reference).

Matter Jurisdiction" (Doc. 37) be **DENIED**, and that the Defendants' "Motion to Dismiss for Forum Non Conveniens or, in the Alternative, Stay for Tribal Exhaustion" (Doc. 40), "Motion to Dismiss Pursuant to Rule 12(b)(6)" (Doc. 41), and "Motion to Dismiss or Strike Plaintiff's Class Allegations" (Doc. 42) be **DENIED** without prejudice to the Defendants' ability to renew those motion after the Court has ruled on their pending motion to compel arbitration (Doc. 39), if appropriate.

**DONE** this the 30th day of July 2020.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.